UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

@WIRELESS ENTERPRISES, INC.,

                                  Plaintiff                    DECISION AND ORDER

-vs-

                                             05-CV-6176 CJS(P)

AI CONSULTING, LLC and ANDREW IORIO,

                              Defendants

———————————————————————————

AI CONSULTING, LLC and ANDREW IORIO,

                              Defendants-Third-Party Plaintiffs

-vs-

CRAIG J. JERABECK, 5LINX, and
CELLCO PARTNERSHIP,

                              Third-Party Defendants

———————————————————————————

APPEARANCES

For third-party plaintiffs:          Eddi Z. Zyko, Esq.
                                120 Fenn Road
                                Middlebury, Connecticut 06762-2515

                                Jules L. Smith, Esq.
                                Blitman & King
                                The Powers Building, Suite 207
                                16 West Main Street
                                Rochester, New York 14614

For third-party defendant
Cellco Partnership:                 Jeffrey J. Calabrese, Esq.
                                Harter, Secrest & Emery LLP
                                1600 Bausch & Lomb Place
                                Rochester, New York 14604-2711

For third-party defendant
5LINX:                               Ellen J. Coyne, Esq.
                                31 East Main Street, Suite 2000
                                Rochester, New York 14614

INTRODUCTION

This is an action for breach of contract and related state-law torts, over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Now before the Court are motions [#19][#23] to dismiss the third-party complaint by third-party defendants Cellco Partnership, doing business as Verizon Wireless ("Verizon"), and 5Linx ("5Linx"), respectively.  For the reasons that follow, Verizon's motion is granted, 5Linx's motion is granted in part and denied in part, and AI is given limited leave to re-plead as set forth below.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Third Party Complaint ("TPC") in this action, and the underlying agency agreement between plaintiff @Wireless Enterprises, Inc. ("@Wireless") and Verizon.[1]  At all relevant times, Verizon was a wireless communications service provider, which sold cellular radio service and equipment through its own retail stores, as well as through agents.  @Wireless sold cellular communications services.  In August 2000, Verizon and @Wireless entered into an "Authorized Agency Agreement," in which Verizon appointed @Wireless as a "non-exclusive sales agent" for Verizon's cellular radio service.  The agreement provided that @Wireless could delegate its obligations under the contract to "a subcontractor or sub-agent," by written contract, subject to the express written approval of Verizon.  The agreement further stated:

---

[1] Generally on a motion to dismiss pursuant to Rule 12(b)(6), the Court must consider only the complaint, which is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citations and internal quotations omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153.

"Personnel employed by, or acting under the authority of, Agent shall not be or be deemed to be employees or agents of Verizon Wireless, and Agent assumes full responsibility for their acts and shall have sole responsibility for their supervision and control." (Agency Agreement § 2)

As part of the agreement, @Wireless agreed to certain restrictions on its ability to sell Verizon's products and the products of Verizon's competitors.   For example, @Wireless agreed that it would sell Verizon's products only within specified geographic areas.  The agreement further stated that the parties could terminate the agreement under certain conditions.  For example, the agreement stated that Verizon could "immediately terminate" the agreement upon written notice to @Wireless, if @Wireless breached the agreement. (*Id*. § 9.1.1)  As to that, the agreement also stated that, "[u]pon termination of this Agreement for any reason, all rights and privileges granted to Agent hereunder shall immediately terminate." (*Id*. § 7.9.2)

Exercising its right to hire sub-agents, @Wireless entered into a franchise agreement with third-party plaintiff AI Consulting ("AI") in March 2002, in exchange for a $145,000 franchise fee payment from AI to @Wireless.  Subsequently, AI operated a retail outlet as an @Wireless franchisee in Southington, Connecticut.  During the course of the business relationship between AI and @Wireless, AI dealt directly with third-party defendant Craig Jerabeck ("Jerabeck"), who was at all relevant times President of @Wireless.  According to AI, Jerabeck told AI that he would "protect the interests of AI." (TPC ¶ 14)

Unbeknownst to AI, between 2002 and 2004, @Wireless repeatedly breached the

agreement with Verizon by, for example, selling products and services of Verizon's competitors.  Although Verizon gave @Wireless numerous opportunities to cure the breaches, @Wireless continued to breach the agreement.  AI contends that third-party defendant 5Linx, of which Jerabeck was the President and sole shareholder, and which was "affiliated" with @Wireless, also made unauthorized sales of Verizon's products on its website during this period.  Verizon complained to Jerabeck about the actions of both @Wireless and 5Linx, and, according to AI, Jerabeck indicated that @Wireless and 5Linx would cease making unauthorized sales.  AI contends, however, that Jerabeck lied, and that both @Wireless and 5Linx continued as before.  Jerabeck did not inform AI of these unauthorized sales by @Wireless and 5Linx, or of the resulting problems with Verizon.  For example, Jerabeck did not inform AI that, in July 2004, Verizon had notified @Wireless that it was in breach of the agreement and that Verizon had decided to terminate the agreement.  Instead, on or about September 10, 2004, Jerabeck sent an email to AI, informing it only that @Wireless was in the process of negotiating a new contract with Verizon, which would not affect AI's "day to day operations."

Verizon stopped providing service to @Wireless and @Wireless's franchisees, including AI, on or about September 16, 2004.  Verizon also simultaneously commenced an action against  @Wireless in the United States District Court for the District of New Jersey. @Wireless then sued Verizon in New York State Supreme Court, Monroe County, on or about September 21, 2004. @Wireless and Verizon subsequently settled the lawsuits and terminated their agreement.  As a result, @Wireless and its franchisees, including AI, could no longer lawfully sell Verizon products.  A short time later, Verizon opened a competing retail store "almost immediately adjacent" to AI's business. AI then commenced

4

an action against Verizon, @Wireless, 5Linx, and Jerabeck in the United States District Court for the District of Connecticut.  However, AI later voluntarily discontinued the action.

Subsequently, @Wireless commenced the subject proceeding against AI, seeking monies allegedly owed pursuant to the parties' franchise agreement.  AI then commenced the subject third-party action against Jerabeck, 5Linx, and Verizon.  In the TPC, AI purports to state 23 separate causes of action.  AI alleges eight causes of action against Jerabeck, for: 1) constructive fraud; 2) actual fraud; 3) constructive trust; 4) breach of contract; 5) breach of implied covenant of good faith and fair dealing; 6) interference with contractual relationship; 7) violation of New York State General Business Law ("GBL") § § 349-350; and 8) negligent misrepresentation.  As to these claims, AI alleges that, at all relevant times, Jerabeck was the "President, Chief Executive Officer (CEO), owner and alter egos of @Wireless and 5Linx" (TPC ¶ 9), and that he intentionally and/or negligently made various false statements which induced AI to enter into and remain in the franchise agreement with @Wireless, caused @Wireless to breach the agreement with Verizon, and ultimately led to the demise of AI's business.

AI alleges the same eight causes of action separately against 5Linx, and in that regard, contends that 5Linx, @Wireless, and Jerabeck are alter egos, and that 5Linx ratified and approved Jerabeck's actions.   Finally, AI asserts all but the negligent misrepresentation claim separately against Verizon.  As for the claims against Verizon, AI contends, on one hand, that Verizon's decision to terminate the agreement with @Wireless had "nothing to do" with AI.  Nonetheless, AI seeks to hold Verizon liable for its business losses, since the termination of that agreement "killed off" AI's business.  AI further suggests that there was some dishonesty by Verizon involving the settlement of

@Wireless's lawsuit in Supreme Court, Monroe County, because certain papers are allegedly missing from that court's file, and because Verizon and @Wireless allegedly "hid" the settlement from AI.  Finally, AI alleges that it was somehow improper for Verizon to open a competing shop near AI's store, after Verizon had terminated the agency agreement with @Wireless.

Verizon and 5Linx subsequently filed the subject motions to dismiss the third-party complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Jerabeck did not move against the complaint.  5Linx contends that the contractual claims, including the claim for contractual interference, must be dismissed, because 5Linx had no contract with AI, and because AI's allegations that 5Linx and @Wireless are "alter egos" are conclusory and fail to satisfy Rule 8 of the Federal Rules of Civil Procedure.  5Linx maintains that AI based its "alter ego" claim on the mere fact that Jerabeck was an officer and owner of both companies, and on hearsay statements contained in the complaint filed by Verizon against @Wireless in the aforementioned lawsuit in New Jersey, which was later settled.[2]  5Linx states that the fraud and constructive fraud claims  also fail, because they are not pled with particularity, and because the TPC does not adequately allege a basis to impute the actions of Jerabeck and/or @Wireless to 5Linx.  5Linx states that the constructive fraud claim similarly is insufficient because AI has not pled the existence of a confidential or fiduciary relationship between AI and 5Linx.  5Linx maintains that the New York General Business Law claims must be dismissed, because the TPC alleges neither false advertising nor any deceptive practice directed toward the public.  Finally, 5Linx contends

---

[2]Verizon's complaint in the New Jersey matter apparently referred to an agency agreement between @Wireless and 5Linx, in which the latter was described as an "Affiliate" of the former.

that the negligent misrepresentation claim is insufficient, since, again, AI has not sufficiently pled a basis to hold 5Linx responsible for Jerabeck's alleged misrepresentations.

As for Verizon's motion, Verizon contends that AI's contractual claims must fail, because there was no contract between them, and because AI had no rights as a third-party beneficiary of the contract between Verizon and @Wireless.  Verizon states that the constructive fraud and constructive trust claims must fail because there was no confidential relationship between Verizon and AI, because Verizon made no representations to AI, and because AI transferred no property to Verizon.   Verizon alleges that the tortious interference with contract claim must also be dismissed, because AI has not alleged that Verizon did anything improper to interfere with AI's contractual relationships, but rather, it alleges merely that Verizon terminated its contract with @Wireless and opened a competing shop, which Verizon maintains it was entitled to do.  Verizon states that the claims pursuant to GBL § § 349 and 350 similarly must fail, since there is no allegation that Verizon engaged in false advertising or other deceptive trade practices, or that such deceptive practices resulted in harm to the public.  Finally, Verizon contends that AI's fraud claims should be dismissed pursuant to Rule 9 of the Federal Rules of Civil Procedure, because they fail to state a claim and are not pled with particularity.  As to that, Verizon states that the TPC fails to identify any particular fraudulent statement, fails to identify anyone at Verizon who allegedly made fraudulent statements, and fails to allege detrimental reliance by AI.

Counsel for the parties to the third-party action appeared before the undersigned for oral argument of the motions on October 12, 2006.  The Court has now thoroughly

considered the parties' submissions and the arguments of counsel.

ANALYSIS

*Rule 12(b)(6) Standard*

It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  However, while the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).  Moreover, and significantly, for purposes of the instant case, such "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Id*.

*Choice of Law*

The instant case involves events that occurred in both the State of New York and the State of Connecticut, and centers around an agreement containing a New York choice-of-law provision.  The principles concerning a choice-of-law analysis are well settled:

> A federal trial court sitting in diversity jurisdiction must apply the law of the
> forum state to determine the choice-of-law.  In New York, the forum state in

8

> this case, the first question to resolve in determining whether to undertake
> a choice of law analysis is whether there is an actual conflict of laws.  It is
> only when it can be said that there is no actual conflict that New York will
> dispense with a choice of law analysis.

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2nd Cir. 2001) (citations and internal quotations omitted).   Accordingly, a court need only perform a choice of law analysis where there is an "actual conflict" between the law of two jurisdictions. *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 331 (2nd Cir. 2005).  Such an actual conflict need not be outcome determinative. *Id*. at 331.  Instead, an actual conflict exists where "the applicable law from each jurisdiction provides different substantive rules," the differences are "'relevant' to the issue at hand," and the differences "must have a 'significant possible effect on the outcome of the trial.'" *Id*. at 331 (citations omitted).  In the instant  case, the parties have cited the law of both the State of New York and the State of Connecticut, though they agree that there is no actual conflict between the law of the two states.  Consequently, the Court will cite New York cases in this Decision and Order.

### Contractual Claims

AI alleges that 5Linx and Verizon are each liable for breach of contract and breach of the warranty of good faith and fair dealing.  To establish a claim of breach of contract under New York law, a plaintiff must show "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 525 (2d Cir.1994) (citation omitted).  Moreover, "[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co., Inc. v.*

*Banca Nazionale del Lavoro*,  961 F.2d 1052, 1056 (2d Cir. 1992) (citation and internal quotation marks omitted).

As to the claims against Verizon, AI alleges that Verizon "caused the breach in the provisions of the interlocking contracts existing between" AI, @Wireless, and Verizon, and also "violated a number of affirmative or implied representations" to AI. (TPC ¶ ¶ 38-39) However, despite AI's conclusory reference to "interlocking contracts," the complaint does not indicate any privity of contract between AI and Verizon.  AI is not a party to the contract between Verizon and @Wireless.  Nor is AI a third-party beneficiary of that agreement. As to any third-party beneficiary claims,

> [a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.

*State of California Pub. Employees' Retirement Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434, 718 N.Y.S.2d 256, 259 (2000) (citations omitted); *see also, Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330 (1976) ("It is old law that a third party may sue as a beneficiary on a contract  made for his benefit.  However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts.")

It is well settled that sub-contractors and sub-agents are not third-party beneficiaries. *See, Subaru Distrib. Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 125 -126 (2nd Cir. 2005) ("Contract language referring to third parties as necessary to assist the parties in their performance does not therefore show an intent to render performance for

the third party's benefit."); *see also*, *Artwear, Inc. v. Hughes*, 202 A.D.2d 76, 83, 615 N.Y.S.2d 689, 693 (1st Dept. 1994) ("This court and others have consistently held in instances where the contract in issue makes clear that a third party will be retained to assist in the performance by the promisee that such third parties are not intended beneficiaries of the main contract."); *Brownell Steel, Inc. v. Great Am. Ins. Co.*, 28 A.D.3d 842, 813 N.Y.S.2d 550, 551 (3d Dept. 2006) ("[A] subcontractor is not normally a third-party beneficiary of the contract between the owner and the general contractor."); *Capital Nat'l Bank of New York v. McDonald's Corp.*, 625 F.Supp. 874, 883 (S.D.N.Y. 1986) (Holding that a McDonald's franchisee's lender who was adversely impacted after McDonald's terminated the franchise agreement was neither in privity with McDonald's nor a third-party beneficiary of the franchise agreement, but rather, was merely an incidental beneficiary of the franchise agreement.)

Here, there is no indication that the agreement between Verizon and @Wireless was for the benefit of AI. Rather, AI is merely a sub-agent or sub-contractor. Moreover, even if AI qualified as a third-party beneficiary to the agreement between Verizon and @Wireless, AI would still have no basis to recover against Verizon. AI admits that @Wireless breached the agreement, and it is clear that the agreement gave Verizon the right to terminate the agreement on that basis. *See, Artwear, Inc. v. Hughes*, 202 A.D.2d at 82, 615 N.Y.S.2d at 693 ("[A] third-party beneficiary, whose rights are derivative, is subject to the same defenses as are available to the contracting party.") In short, as a subagent, AI could not have had greater rights under the agreement with Verizon than @Wireless had, and the allegations in the TPC clearly indicate that Verizon was entitled

to terminate the agreement with @Wireless.   Accordingly, the contract claims against Verizon are dismissed.

Turning to the contractual claims against 5Linx, AI alleges that Jerabeck and @Wireless caused the breach of the "interlocking agreements" between Verizon, @Wireless, and AI, and that Jerabeck and 5Linx are "alter egos."[3] (TPC p. 27 ¶ 38; p. 29, ¶ 43)   The law concerning the alter-ego doctrine is well settled:

> Corporations, of course, are legal entities distinct from their managers and shareholders and have an independent legal existence.  Ordinarily, their separate personalities cannot be disregarded.  In a broad sense, the courts do have the authority to look beyond the corporate form where necessary to prevent fraud or to achieve equity.  More specifically, where a shareholder uses a corporation for the transaction of the shareholder's personal business, as distinct from the corporate business, the courts have held the shareholder liable for acts of the corporation in accordance with the general principles of agency.  The determinative factor is whether 'the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends.

*Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d at 656, 389 N.Y.S.2d at 331(citations omitted); *Rivera v. Citgo Petroleum Corp.*,  181 A.D.2d 818, 819, 583 N.Y.S.2d 159 (2nd Dept. 1992) ("Generally, courts will only pierce the corporate veil and hold two corporations to constitute a single legal unit, where one is so related to, or organized, or controlled by, the other as to be its instrumentality or alter ego.")

---

[3]AI also alleges that  5Linx "collaborated in, directed, encouraged, consented to, permitted, ratified or approved" Jerabeck's actions.  The Court will consider these allegations in connection with the claim for tortious interference with contract, however, to the extent that plaintiff is attempting to allege a concerted-action theory for breach of contract, it fails to state a claim. *See, Binder v. National Life of Vermont*, No. 02 Civ. 6411(GEL), 2003 WL 21180417 at *4 (S.D.N.Y. May 20, 2003) ("New York law permits a party to be held liable for another's tortious conduct if it has agreed to 'participate in a common plan' to commit a tortious act, and a tortious act is committed pursuant to that agreement.  This theory of joint liability does not apply to breaches of contract, however.") (citation omitted).

In this case, AI alleges that Jerabeck, @Wireless, and 5Linx are "alter egos" of each other. (TPC p. 3, ¶ 9)  Apart from this purely conclusory allegation of the parties' legal status, AI states that Jerabeck was "the President, Chief Executive Officer (CEO) [and] owner" of both @Wireless and 5Linx. (*Id.*), and  further alleges that Jerabeck's photograph appeared on the websites of both @Wireless and 5Linx. (TPC pp. 7-9) Finally, AI alleges that Jerabeck made representations to Verizon concerning both companies and caused the breaches of the agreements between Verizon and @Wireless and between @Wireless and AI, respectively. (*Id.*)  Claims of alter ego status need only satisfy the liberal notice pleading standard of Rule 8. *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 122 (S.D.N.Y. 1996).  Nonetheless, the Court finds that the allegations of alter-ego status here are so conclusory that they fail to state a claim. *See, In re Currency Conversion Fee Antitrust Litigation*, 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard.") Accordingly, AI's contract claims against 5Linx must be dismissed.

### Tortious Interference with Contract

The Court will now consider AI's claims for tortious interference with contract.  As to that, "the tort of intentional interference with the performance of a contract requires proof of the following elements: a valid contract between plaintiff and a third party; defendant's knowledge of the contract; defendant's intentional procurement of a breach by the third party; and resultant damages." *Chu v. Dunkin' Donuts Inc.*, 27 F.Supp.2d 171, 173 (E.D.N.Y. 1998) (citations omitted).  A defendant intentionally procures a breach when he

"knows of a valid . . . contract" and "commits an intentional act whose probable and foreseeable outcome is that one party will breach the contract, causing the other party damage." *Leventhal v. Franzus Co., Inc.*, No. 88 CIV. 3547 (MBM), 1988 WL 132868 at *7 (S.D.N.Y. Dec. 6, 1988).

Here, plaintiff has not alleged that Verizon induced or procured @Wireless to breach the sub-agency agreement, or any other agreement. Much to the contrary, AI alleges that Verizon was "not responsible, or even knowledgeable, about the actions of Jerabeck, @Wireless and 5Linx." (TPC ¶ 38) At most, AI alleges that Verizon's termination of its agreement with @Wireless adversely affected the sub-agency agreement between AI and @Wireless.[4] However, a tortious interference claim similar to this was rejected in the case of *Artwear, Inc. v. Hughes*, 202 A.D.2d at 85-86, 615 N.Y.S.2d at 694 -695:

> Artwear's cause of action for tortious interference with contractual rights, intertwined with its claim to third-party beneficiary status, fares no better.
> ***
> While the amended complaint does allege a breach of the license agreement, it fails to allege that the Estate intentionally induced a breach of the sublicense agreement.
> ***
> Artwear argues that neither it nor SNC was able to perform under the sublicense agreement because of the Estate's breach of the license agreement. Artwear's cause of action for tortious interference with contract is, therefore, by its own terms, based on the Estate's alleged breach of the license agreement, which breach brought about SNC's failure to perform the sublicense agreement. In reality, this is nothing more than a claim for damages incidentally flowing from the breach of the license agreement, to which Artwear was not a party and of which it is not, for the reasons indicated, a third-party beneficiary.
> ***
> Thus, Artwear, a sublicensee . . . cannot transform an alleged breach of the

---

[4]Elsewhere in the complaint, AI insinuates that Verizon is somehow guilty of wrongdoing involving the removal of documents from a court file. However, the complaint appears devoid of any good faith factual basis for such an allegation.

license agreement by the Estate, a party with which it is not in privity, into a tort claim against that party. Artwear's remedy is against the party with whom it dealt, SNC.

*Id.*, 202 A.D.2d at 85-86, 615 N.Y.S.2d at 694 - 695.  In this case, AI's tortious interference claim against Verizon is even less meritorious than the claim that was dismissed in the *Artwear* case.  That is, here, AI has not even alleged that Verizon breached the agreement with @Wireless, but instead, alleges just the opposite.  Consequently, the tortious interference claim against Verizon is dismissed.

As for the tortious interference claim against 5Linx, AI alleges that 5Linx "collaborated in, directed, encouraged, consented to, permitted, [and] ratified or approved" the "actions of Jerabeck." (TPC p. 30, ¶ 5)  By that, the Court understands AI to be alleging that 5Linx and Jerabeck are jointly liable under a concerted-action theory.[5]  As to that,

> [t]he theory of concerted action liability rests upon the tenet that all those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him.

*Harris v. Stanley*, 21 A.D.3d 612, 613, 799 N.Y.S.2d 837, 838 - 839 (3d Dept. 2005).  As identified by the Second Circuit,

> [t]he elements of concerted-action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort.  In order to be liable for acting in concert with the primary tortfeasor . . . the defendant must know the wrongful nature of the primary actor's conduct.

---

[5]The concerted action theory of liability is different than the alter ego theory.  This proposed claim does not use the term "alter ego," and to the extent that AI may be attempting to state an alter ego claim, the Court finds that it fails to state a claim, for the reasons discussed above.

*Pittman by Pittman v. Grayson*, 149 F.3d 111, 122 -123 (2nd Cir. 1998) (citations and internal quotation marks omitted).

Applying these principles, the Court finds that the tortious interference claim against 5Linx is sufficient to meet the Federal Rules' liberal pleading requirements.  Drawing all reasonable inferences in AI's favor, the TPC alleges that there was a contract between AI and @Wireless[6], of which Jerabeck was aware, which was premised on the fact that @Wireless was authorized to sell Verizon's products.  The TPC can further be construed to allege that Jerabeck intentionally committed acts whose "probable and foreseeable outcome" was that Verizon would terminate@Wireless's ability to sell Verizon's products, which would also cause @Wireless to breach its agreement with AI.  The TPC further alleges that 5Linx "collaborated" with Jerabeck, and "approved" and "encouraged" his actions in that regard.  Consequently, the motion to dismiss the tortious interference claim against 5Linx is denied.

*Actual Fraud and Constructive Fraud*

The Court will next consider AI's claims of actual fraud and constructive fraud.  To prevail on a cause of action for actual fraud, a plaintiff must establish that a defendant made "a representation of fact, which is either untrue and known to be untrue or recklessly made, and which was offered to deceive the other party and to induce him to act upon it, causing injury." *Klembczyk v. Di Nardo*, 265 A.D.2d 934, 936, 705 N.Y.S.2d 743, 744 (4th Dept. 1999) (citation and internal quotation marks omitted).  The elements of constructive

---

[6]As already discussed, the complaint fails to allege that there was any contractual privity between Verizon and AI.  Therefore, to the extent that AI is alleging that 5Linx tortiously interfered with a contract between Verizon and AI, the claim must also fail.

fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties. *Id.*, 265 A.D.2d at 936, 705 N.Y.S.2d at 744.  Such a relationship requires a "high degree of dominance and reliance," and where the parties have an arm's length business relationship, a plaintiff's "subjective claims of reliance on defendants' expertise" are insufficient. *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355, 777 N.Y.S.2d 62, 65 (1st Dept. 2004) (citations omitted).  Rule 9(b) of the Federal Rules of Civil Procedure requires that averments of fraud be "stated with particularity," which means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)

Based on these principles, AI's claims against Verizon must be dismissed.  As for actual fraud, AI alleges in conclusory fashion that Verizon "made a number of affirmative or implied fraudulent misrepresentations," such as that Verizon would "protect" AI's business interest, and "would not without good cause" open a competing Verizon store near AI's location.  Apart from the vagueness of the alleged statements themselves, which do not state a claim, AI does not allege who at Verizon allegedly made them, nor does it allege when or where they were made.  Consequently, the allegations also fail to satisfy Rule 9(b).  Moreover, to the extent that AI contends that the alleged statement concerning the opening of a competing shop was fraudulent, the Court disagrees, since Verizon did not open a store in Southington, Connecticut, until after the agreement between Verizon and @Wireless was terminated.  Certainly, the termination of that agreement would have

amounted to good cause for Verizon to open its own store.[7]

Similarly, the constructive fraud claim against Verizon also must be dismissed.  As to this claim, AI seeks to hold Verizon liable for the actions of Jerabeck.  (*See*, TPC p. 33) For example, AI states that Verizon "collaborated in, directed, encouraged, consented to, permitted, ratified, or approved" Jerabeck's actions, and that Verizon somehow "violated the trust and confidence, which they [AI] justifiably reposed in Jerabeck.". (*Id*.)  However, AI's allegations against Verizon are deficient in  several respects.  First, as to the underlying tort allegedly committed by Jerabeck, the complaint merely makes the conclusory allegation that Jerabeck stood "in a confidential, fiduciary and special relationship" to AI. (TPC p. 17, ¶ 33)  Such conclusory allegations are insufficient to plead a fiduciary relationship:

> The existence of fiduciary duties depends on the facts of a particular relationship.  Usually, therefore, a claim alleging the existence of a fiduciary duty is not subject to dismissal in a 12(b)(6) motion, given the generous pleading standard established in Fed.R.Civ.P. 8.  Nevertheless, . . . [a]llegations of reliance on another party with superior expertise, standing by themselves, will not suffice.  To plead a cause of action alleging that defendants became fiduciaries, plaintiffs must allege at least some of the factors from which a court could conclude that such a relationship has been established. Plaintiffs' amended complaint merely alleges that "[a]s a consequence of undertaking to act as a dealer-manager, promoters, sellers, accountants and bankers regarding the offering of Pineloch limited partnership interests, defendants entered into a fiduciary relationship of trust and confidence with plaintiffs." Amended Complaint ¶ 94. Such a conclusory allegation does not satisfy Rule 8.

*Boley v. Pineloch Associates, Ltd.*, 700 F.Supp. 673, 681 (S.D.N.Y. 1988) (footnote and

---

[7]In any event, it appears that Verizon expressly reserved the right to compete with @Wireless and its sub-agents. See, Agency Agreement § 2 ("Nothing herein shall restrict or prohibit Verizon Wireless from, in its sole discretion, offering Subscribers and potential Subscribers in the Area, through its direct sales force or otherwise, volume discounts, promotional offers, new or modified price plans or any other special offers.")

citation omitted).

Even assuming, *arguendo*, that AI could adequately state an underlying constructive fraud claim against Jerabeck, it has not adequately alleged concerted action between Jerabeck and Verizon.[8]   For example, the totally conclusory assertions that Verizon ""collaborated in, directed, encouraged, consented to, permitted, ratified, or approved" Jerabeck's actions are contrary to the specific factual allegations in the complaint, which indicate that Verizon did *not* approve of Jerabeck's actions.[9]   In fact, the TPC contains numerous factual statements describing how Verizon sought to stop Jerabeck from committing the very acts by which AI claims to have been injured.   Moreover, it is clear to the Court that AI has no personal knowledge of what transpired between Verizon and Jerabeck, but rather, has based its allegations in that regard upon the allegations made by Verizon against @Wireless in the New Jersey district court proceeding discussed above.   Even assuming, *arguendo*, that AI may rely on such hearsay in framing its complaint, Verizon's allegations in the New Jersey matter, as set forth in the TPC, provide no good faith basis for AI to allege that Verizon acted in concert with Jerabeck. Consequently, the fraud and constructive fraud claims against Verizon are dismissed.

Turning to the fraud and constructive fraud claims against 5Linx, the Court finds,

---

[8]"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dept. 2003) (citations omitted).

[9] *See, e.g.*, TPC p. 9, ¶ 29: "Verizon Wireless executives had not approved of Jerabeck's service on behalf of 5Linx, and in fact, had demanded that 5Linx cease the specific activities at issue."; p. 9, ¶ 30: "@Wireless having again breached the agreements, [Verizon executive] Turco admonished Jerabeck." As discussed earlier, AI alleges elsewhere in the TPC  that Verizon was "not responsible, or even knowledgeable, about the actions of Jerabeck, @Wireless and 5Linx." (TPC ¶ 38)

first, that the allegations of fraud are not pled with particularity as required by Rule 9(b).

To the extent that AI is attempting to allege that 5Linx actually made fraudulent statements, the TPC fails to provide any detail. (*See*, TPC pp. 24-25) Similarly, to the extent that AI is attempting to state a claim for concerted-action liability against 5Linx, based upon fraudulent statements made by Jerabeck, the TPC fails to describe Jerabeck's alleged statements with particularity.   The only exceptions to that are the alleged e-mail by Jerabeck on September 10, 2004, and the conference call made by Jerabeck on September 21, 2004. (TPC pp. 5-6)  As to those statements, though, AI has not explained how they induced reliance or caused injury.   As for the constructive fraud claim, AI contends that Jerabeck breached a fiduciary duty, and that 5Linx "collaborated in, directed, encouraged, consented to, permitted, ratified, or approved" his actions. (TPC p. 23) However, as discussed above, AI fails to plead the existence of a fiduciary relationship between itself and Jerabeck.  Moreover, AI fails to plead that 5Linx knowingly aided and abetted the alleged breach of fiduciary duty. *See, Kaufman v. Cohen*, 307 A.D.2d at 125-26, 760 N.Y.S.2d at 169-70 ("Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty . . . .   A person knowingly participates in a breach of fiduciary duty only when he or she provides "substantial assistance" to the primary violator. Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.  However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.") (citations omitted).  Consequently,

the fraud and constructive fraud claims against 5Linx are dismissed.

*Constructive Trust*

The Court will now consider AI's constructive trust claims.  As to that, it is well settled that four elements are required for a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Central Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (citations omitted).  As for the claim against Verizon, AI alleges that it "transferred property" to Verizon, "which st[ood] in a confidential, fiduciary and special relationship" to AI, "with the full expectation that Jerabeck and @Wireless would not wrongfully . . . harm the opportunity for them generated by said business arrangements."  (TPC p. 36, ¶ 35)  AI further contends that Verizon now "holds any such property" as trustee for the benefit of AI. (*Id*. ¶ 36) These allegations against Verizon fail to adequately allege the existence of any confidential or fiduciary relationship between AI and Verizon.   In general there is no fiduciary relationship between a franchisor and franchisee, let alone between two entities, such as AI and Verizon, who have no contractual privity. *See, Marcella & Co., Inc. v. Avon Prods., Inc.*, 282 A.D.2d 718, 719, 724 N.Y.S.2d 192, 193 (2nd Dept. 2001) ("[T]here is no fiduciary relationship between a franchisee and a franchisor.") (citation omitted).  AI further fails to identify an express or implied promise by Verizon, fails to identify the res that is supposedly in Verizon's

possession or how it came to be there,[10] and fails to explain how Verizon acted unjustly.[11]
Accordingly, the constructive trust claim against Verizon is dismissed.

Similarly, the constructive trust claim against 5Linx fails to state a claim.  As to that,
AI alleges that it had a "confidential, fiduciary and special relationship" with Jerabeck and
@Wireless, which breached duties to AI and thereby became unjustly enriched, and that
5Linx "collaborated in, directed, encouraged, consented to, permitted, ratified or approved"
the actions of @Wireless and Jerabeck.  As already discussed, fiduciary duty claims are
fact specific and often not subject to dismissal on a Rule 12(b)(6) motion. *Boley v. Pineloch
Associates, Ltd.*, 700 F.Supp. at 681.   However, AI has failed to properly allege the
existence of any fiduciary relationship between itself and Jerabeck and/or @Wireless.
Instead, the complaint indicates only the existence of an arm's length agent/subagent or
franchisor/franchisee relationship.  Accordingly, the constructive trust claim against 5Linx
is dismissed.

*Violation of NY General Business Law (GBL) § § 349-350*

AI next contends that Verizon and 5Linx violated New York's statutory prohibition
against deceptive business practices and advertising.  As to that, GBL § 349 prohibits
deceptive business practices, while GBL § 350 prohibits "[f]alse advertising in the conduct
of any business, trade or commerce or in the furnishing of any service."  Significantly,

---

[10]Though it is unclear, AI appears to suggest that Verizon is somehow in possession of the
franchise fee that AI paid to @Wireless.

[11] The purported claim for constructive trust against Verizon states that "5Linx," not Verizon,
"collaborated in, directed, encouraged, consented to, permitted, ratified or approved" the actions of
Jerabeck and @Wireless. (TPC p. 36, par35)  To the extent that AI meant to allege that Verizon aided and
abetted Jerabeck or @Wireless, the TPC fails to state a claim for the same reasons already discussed
above.

22

claims under GBL § § 349 and 350 must involve conduct that was directed at the public at large. *Canario v. Gunn*, 300 A.D.2d 332, 333, 751 N.Y.S.2d 310, 311 (2d Dept. 2002). Consequently, claims arising from private disputes are not actionable. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290 (1995) ("The conduct need not be repetitive or recurring but defendant's acts or practices must have a *broad impact on consumers at large*; private contract disputes unique to the parties  would not fall within the ambit of the statute") (emphasis added, citation omitted).   As for the requirement that the deceptive act have been "consumer oriented," "[t]he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2nd Cir. 1995).

In this case, there is no allegation that either Verizon or 5Linx engaged in false advertising, or any other deceptive trade practice, that was directed toward or that was injurious to the public.   Nor does AI claim to have been directly injured by any such deceptive practices.  At most, AI alleges that 5Linx made false statements on its website concerning its affiliation with Verizon.   However, there is no allegation that AI was misled or otherwise injured as a result of those alleged misstatements.   Accordingly, the claims pursuant to GBL § § 349 & 350 are dismissed.

*Negligent Misrepresentation*

The Court will now consider AI's claim for negligent misrepresentation against 5Linx. The elements of such a claim are that

(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or

23

she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.  However, the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 -21 (2nd Cir. 2000) (citations

omitted).  As to the first of these elements,

in order to determine the existence of a special relationship and duty in the context of a negligent misrepresentation claim, the Second Circuit has held that New York law requires a fact finder to consider the following three factors: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir.2001) (quotation marks and citation omitted). In *Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996), the New York Court of Appeals explained that "[i]n the commercial context, a duty to speak with care exists when the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information." 89 N.Y.2d at 263 (quotation marks and citation omitted). *In general, a simple commercial relationship, such as that between a buyer and seller or franchisor and franchisee, does not constitute the kind of "special relationship" necessary to support a negligent misrepresentation claim. See Dimon, Inc. v. Folium, Inc.*, 48 F.Supp.2d 359, 373 (S.D.N.Y.1999).  A commercial relationship may become a special relationship, however, where "the parties ⋯ enjoy a relationship of trust and reliance 'closer ⋯ than that of the ordinary buyer and seller." ' *Polycast Tech. Corp. v. Uniroyal, Inc.*, No. 87 Civ. 3297, 1988 WL 96586, at *10 (S.D.N .Y. Aug. 31, 1988) (citations omitted). Courts have found a special relationship and duty, for example, where defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information.

*Century Pacific, Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258(SAS), 2004 WL 868211 at

*8 (S.D.N.Y. Apr. 21, 2004) (emphasis added); *see also, Adiel v. Coca-Cola Bottling Co.*

*of New York, Inc.*, 95 CIV. 0725 (WK), 1995 WL 542432 at *5 (S.D.N.Y. Sep. 13, 1995)

("Ordinarily, New York courts do not recognize a fiduciary relationship between a franchisee and franchisor.")  "Courts in this circuit have held that a determination of whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage." *Century Pacific, Inc. v. Hilton Hotels Corp.*, 2004 WL 868211 at *8 (citation and internal quotation marks omitted).  Nonetheless, "plaintiffs must allege at least some of the factors from which a court could conclude that such a relationship has been established." *Boley v. Pineloch Associates, Ltd.*, 700 F.Supp. at 681.

In the instant case, AI's negligent misrepresentation claim against 5Linx is based on statements allegedly made by Jerabeck. (*See*, TPC p. 32, ¶ 47) ("Jerabeck was careless, in which 5Linx, inter alia, collaborated in, directed, encouraged, consented to, permitted, ratified, or approved.")  However, AI has not adequately pled the existence of a special or fiduciary relationship between Jerabeck and AI. AI also has not identified the particular statements upon which it bases this claim, or explained how it detrimentally relied on such a statement.[12] Nor has AI alleged that 5Linx knowingly induced or participated in Jerabeck's alleged breach of fiduciary duty. *See*, *Kaufman v. Cohen*, 307 A.D.2d at 125, 760 N.Y.S.2d at 169 ("A claim for aiding and abetting a breach of fiduciary duty requires . . . that the defendant knowingly induced or participated in the breach.") The negligent misrepresentation claim against 5Linx is therefore dismissed.

---

[12]In this circuit, it is unclear whether or not Rule 9(b) applies to negligent misrepresentation claims. *See, Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2nd Cir. 2004) ("Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation. District court decisions in this Circuit have held that the Rule is applicable to such claims, but this Court has not adopted that view.") (citation omitted).  However, even assuming that 9(b) does not apply, plaintiff should at least identify the statement(s) upon which it is basing the claim.

*Leave to Re-plead*

Having determined that most of AI's claims should be dismissed, the Court must

consider whether to grant AI leave to file an amended complaint.  The granting of such

leave is strongly favored:

> Without doubt, this circuit strongly favors liberal grant of an opportunity to
> replead after dismissal of a complaint under Rule 12(b)(6). Federal Rule of
> Civil Procedure 15(a) provides that "a party may amend the party's pleading
> ⋯ by leave of court ⋯ and leave shall be freely given when justice so
> requires." In interpreting this rule, this Court has indicated that where a
> plaintiff clearly has expressed a desire to amend, a lack of a formal motion
> is not a sufficient ground for a district court to dismiss without leave to
> amend. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-53 (2d
> Cir.1991) (remanding where plaintiff, faced with the Eleventh Amendment
> immunities of the named defendants, had requested leave to replead claims
> against the defendants in their personal capacities). And in *Ronzani v. Sanofi
> S.A.*, 899 F.2d 195 (2d Cir.1990) . . . we ruled that the district court had
> abused its discretion in failing to allow repleading where the plaintiff had
> made no motion to replead but had noted in his opposition brief his desire to
> replead if the motion were granted. *Id*. at 198-99.

*Porat v. Lincoln Towers Community Ass'n*, — F.3d — ,  2006 WL 2670387 at  *2 (Second

Cir. Sep. 18, 2006).  On the other hand, a  "plaintiff is not necessarily entitled to a remand

for repleading whenever he has indicated a desire to amend his complaint, notwithstanding

the failure of plaintiff's counsel to make a showing that the complaint's defects can be

cured." *Id*. (citation omitted).   Moreover,  leave  to  amend  should  be  denied  where

amendment would be futile. *Rubin v. Valicenti Advisory Services, Inc.*, 236 F.R.D. 149, 152

(W.D.N.Y.  2006)  ("Notwithstanding  the  generally  lenient  standard  for  permitting

amendments, it is also well-settled that if the amendment proposed by the moving party

is futile, "it is not an abuse of discretion to deny leave to amend.") (citation omitted).

Here, it would not be accurate to say that AI has requested leave to file an amended complaint in the event that the motions are granted.  Rather, AI appears to assume that such leave will be granted.  As to that, AI merely cites, in its briefs, the case of *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988), for the proposition that, "When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8."  AI has not attempted to explain how it would amend the complaint if given the opportunity.

In deciding whether to permit AI to re-plead, the Court views the claims against Verizon and those against 5Linx very differently.  In short, there appears to be at least a plausible basis for the claims against 5Linx, and a reasonable chance that AI could remedy the defects identified above.  On the other hand, it does not appear that Verizon belongs in this lawsuit.  In an abundance of caution, however, the Court will permit AI to re-plead its actual fraud claim against Verizon.  As to that, the Court notes that, during oral argument, it questioned AI's counsel about the basis for its fraud claim against Verizon, noting that it appeared that AI was attempting to assert a theory of concerted action liability against Verizon, based upon statements made by Jerabeck.  The following exchange took place:

THE COURT:  I am trying to understand the theory.  Are you claiming that Jerabek's statements to your clients are somehow attributable -- that Verizon is responsible for Jerabek's statements to your client[?]

MR. ZYKO:  Some of them might be, but my client will be prepared to testify at trial, that there were *actual employees of Cellco that made these representations to him . . . representations that were made directly to him -- to him, through him, to -- for AI and his wife Julie, made by Cellco [Verizon] employees.*

27

THE COURT:  So you could -- what you're telling me is that you could apply -- I would agree that you haven't complied with the pleading requirements of rule 9, and you're saying you could.  You're saying, if I gave you [a] chance to re plead, you could come in here and re plead in accordance with rule 9 [?]

MR. ZYKO:  Your Honor --

THE COURT:  You're –

MR. ZYKO:  Yes.  Yes.

THE COURT:  You're making that representation.

MR. ZYKO:  Yes, I am making that representation, I have to go back and review the [pleading] with my client, but my memory when I drafted the complaint, which is a while ago, my answer to that is yes.

(Court's Real Time Transcript of appearance on October 12, 2006) (emphasis added).  The Court is admittedly somewhat skeptical, since it does not seem likely that learned counsel would have omitted such details, i.e., actual statements by Verizon, from the complaint if they actually existed.  However, the Court will rely upon the representation of AI's counsel, and will permit AI to re-plead the actual fraud claim against Verizon, if further discussion between AI and its counsel indicate a good faith basis for asserting such a claim.  Leave to re-plead as to the remaining claims against Verizon is denied, however, since it appears that amendment would be futile.

## CONCLUSION

For all of the foregoing reasons, Verizon's motion is granted in its entirety, and all claims are dismissed with prejudice, except the claim for actual fraud, which is dismissed without prejudice.  AI is permitted leave to file an amended pleading re-asserting that claim, in a manner that complies with Rule 9(b), within 20 days of the date of this Decision and Order.  5Linx's motion is denied as to the claim for tortious interference, but is otherwise

granted.  The claims against 5Linx pursuant to the NY GBL are dismissed with prejudice, however, the remaining dismissed claims are dismissed without prejudice, and AI is permitted leave to file an amended pleading re-asserting those claims within 20 days of the date of this Decision and Order.

       SO ORDERED.

Dated:        Rochester, New York
                October 30, 2006

                          ENTER:

                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge